JUDGE FORREST

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE THE ARBITRATIONS BETWEEN: | : | |
| | : | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, | : | CIVIL ACTION NO. |
| | : | |
| Petitioner, | : | |
| v. | : | **18 CV   4887** |
| | : | |
| EMPLOYERS INSURANCE COMPANY OF WAUSAU, | : | |
| | : | |
| Respondent. | : | |

---

## NATIONAL UNION FIRE INSURANCE COMPANY'S PETITION TO CONFIRM ARBITRATION AWARD

Petitioner, National Union Fire Insurance Company of Pittsburgh, Pennsylvania

("National Union"), by its counsel White and Williams LLP, hereby moves this Court to enter an

order and judgment, pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9,

confirming the arbitral Final Award dated June 14, 2017, which was issued following an

arbitration between National Union and Employers Insurance Company of Wausau ("Wausau").

1.      This Petition to Confirm Arbitration Award pursuant to Section 9 of the Federal

Arbitration Act ("FAA") is submitted to confirm the arbitral Final Award dated June 14, 2017

(the "Final Award"), which was issued following an arbitration between Petitioner and

Respondent, Wausau.  (*See* Final Award, attached hereto as Exhibit A.)[1]

---

[1] Pursuant to a Confidentiality Order requiring that certain Arbitration Information be kept confidential, National Union has filed a motion to seal concurrently with this motion and has requested that the Court maintain the Final Award under seal.

**THE PARTIES**

2.      Petitioner, National Union, is a Pennsylvania company with its principal place of business at 175 Water Street 18th Floor, New York, New York 10038.

3.      Upon information and belief, Respondent, Wausau, is an insurance company organized and existing under the laws of the state of Wisconsin with its principal place of business at 500 Third Street, Wausau Wisconsin.

**JURISDICTION AND VENUE**

4.      This Petition is submitted under Chapter 1 of the FAA, 9 U.S.C. §§ 1-16 which provides for enforcement of awards issued pursuant to commercial arbitration agreements. *See* 9 U.S.C. § 9. This proceeding involves a written arbitration provision in a contract evidencing a transaction involving commerce, and thus falls within the Act. *See* 9 U.S.C. § 2.

5.      This Court has subject matter jurisdiction in this case pursuant to Section 28 U.S.C. § 1332, which provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States." Because the amount in controversy in the subject arbitration was in excess of $75,000, Petitioner is a citizen of New York and Respondent is a citizen of Wisconsin, this Court has subject matter jurisdiction.

6.      This Court has personal jurisdiction over Wausau because the contract at issue in the subject arbitration expressly provides that arbitration take place in New York, New York, and the arbitration between the parties took place in New York, New York. (*See* Casualty Excess Reinsurance Contract (the "Treaty"), attached hereto as Exh. B at 11.)

7.      This Court also has personal jurisdiction over Wausau because of Wausau's regular and repeated contacts with the State of New York.

20977129v.1

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that Wausau is a corporation amenable to personal jurisdiction in this district.  Venue is also proper based on Section 9 of the FAA because the contract at issue in the subject arbitration expressly provides that arbitration take place in New York, New York 9.  9 U.S.C. § 9.

## BACKGROUND

9.      In a reinsurance treaty, a reinsurer agrees to indemnify the reinsured with respect to a specified portion of the reinsured's obligations under insurance policies issued by the reinsured, in exchange for a portion of the premium paid to the reinsured for the underlying insurance policies.

10.     Wausau participated as National Union's reinsurer under the Treaty.  (*See* Exh. B.)

11.     The Treaty contains a mandatory arbitration provision that provides:

> All disputes or differences arising out of the interpretation of this contract shall be submitted to the decision of two arbitrators, one to be chosen by each party and in the event of the arbitrators failing to agree, to the decision of an umpire to be chosen by the arbitrators. . . .  The Arbitration proceeding shall take place in New York, New York.

(*See* Exh. B at Art. 15.)

12.     National Union issued an insurance policy (the "Policy") to California Portland Cement Company ("Cal Portland"), a Southern California based manufacturer of cement products used in the construction industry.

13.     Cal Portland was named as a defendant in more than a thousand lawsuits alleging exposure to Cal Portland's asbestos containing products.

14.     As a result of the asbestos-related lawsuits brought against Cal Portland, National Union has paid more than $16 million under the Policy.

3

15.    As a result of the payments made under the Policy, National Union submitted reinsurance billings to Wausau under the Treaty.

16.    National Union's reinsurance billings presented the underlying Cal Portland losses as a single occurrence based on the "one event" language in the Treaty.

17.    Wausau refused to pay the Cal Portland reinsurance billings.

18.    On November 13, 2015, following Wausau's refusal to pay the reinsurance billings, National Union initiated arbitration pursuant to the terms of the Treaty.  (*See* National Union's arbitration demand, attached hereto as Exh. C.)

19.    A Panel of three arbitrators was appointed by the parties with respect to the arbitration under the Treaty.

20.    The parties submitted their dispute to the Panel on June 12, 2017 through June 13, 2017 at a hearing in New York, New York.

21.    At the hearing, the Panel considered the testimony of witnesses, each of whom was subject to cross-examination, admitted documents as exhibits and permitted oral argument.

22.    After the hearing, on June 14, 2017, the Panel issued an award (the "Final Award").  (*See* Exh. A.)

23.    National Union now petitions this Court to confirm the Final Award.

### THE AWARD SHOULD BE CONFIRMED

24.    Section 9 of the Federal Arbitration Act provides that a party may seek to have an arbitration award confirmed within one year of the date the award was made, and that a court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.

20977129v.1

25.     None of the grounds specified in 9 U.S.C. § 10 for vacating or 9 U.S.C. § 11 for modifying or correcting an award are applicable here.  Therefore, this Court should confirm the Award pursuant to 9 U.S.C. § 9.

WHEREFORE, for the reasons stated herein, and as more fully explained in the accompanying memorandum of law, Petitioner National Union Fire Insurance Company, requests that this Court enter an order confirming the Final Award dated June 14, 2017, which was issued following the June 12, 2017 through June 13, 2017 arbitration between Petitioner and Wausau.

Respectfully submitted,

WHITE AND WILLIAMS LLP

By: _Stuart J. Wells_

OF COUNSEL:
Daryn E. Rush
Justin K. Fortescue
White and Williams LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA  19103
rushd@whiteandwilliams.com
fortescuej@whiteandwilliams.com
(215) 864-7000

Stuart J. Wells
SDNY: SW2186
7 Times Square, Suite 2900
New York, New York 10036
wellss@whiteandwilliams.com
(212) 244-9500

*Attorneys for Petitioner National Union Fire Insurance Company of Pittsburgh, Pennsylvania*

Dated:  June 1,  2018

5

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE THE ARBITRATIONS BETWEEN: | : |
| | : |
| NATIONAL UNION FIRE INSURANCE | : |
| COMPANY OF PITTSBURGH, | :   CIVIL ACTION NO. |
| PENNSYLVANIA | : |
| | : |
| Petitioner, | : |
| v. | : |
| | : |
| EMPLOYERS INSURANCE COMPANY OF | : |
| WAUSAU, | : |
| | : |
| Respondent. | : |

# EXHIBIT A
# TO BE FILED UNDER SEAL

# SUBJECT TO MOTION TO SEAL
# FILED CONCURRENTLY HEREWITH

**IN THE MATTER OF THE ARBITRATIONS BETWEEN**

National Union Fire Insurance Company of Pittsburgh, Pennsylvania

Petitioner

and

Employers Insurance Company of Wausau

Respondent





# Exhibit B

# Contract Effective 01/01/1985 Through 12/31/1985



EXHIBIT

1

LM 4/25/17

Wausau001038

Contract No. 01878 - 85

TERMINATION ENDORSEMENT

to

CASUALTY EXCESS REINSURANCE CONTRACT

(CONTRACT EFFECTIVE JANUARY 1, 1985)

covering
$10,000,000 each occurrence
excess
$ 5,000,000 each occurrence

issued to

NEW HAMPSHIRE INSURANCE COMPANY
GRANITE STATE INSURANCE COMPANY
AMERICAN FIDELITY COMPANY
ILLINOIS NATIONAL INSURANCE COMPANY
AMERICAN GLOBAL INSURANCE COMPANY
INLAND NATIONAL INSURANCE COMPANY
NEW HAMPSHIRE INDEMNITY COMPANY, INC.
AUDUBON INSURANCE COMPANY
AMERICAN HOME ASSURANCE COMPANY
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA
BIRMINGHAM FIRE INSURANCE COMPANY
INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA
A.I.U. INSURANCE COMPANY
ALASKA INSURANCE COMPANY
A.I. LLOYD'S INSURANCE COMPANY
COMMERCE AND INDUSTRY INSURANCE COMPANY
MEMBER COMPANIES OF NORTH AMERICAN MANAGERS
and
THE NEW HAMPSHIRE QUOTA SHARE REINSURERS

by

EMPLOYERS INSURANCE OF WAUSAU A MUTUAL COMPANY

It is understood and agreed that effective 12:01 a.m., Eastern Standard Time, January 1, 1986, this contract is cancelled in accordance with Article 1, TERM.

All other terms and conditions remain unchanged.

- 1 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001039

Contract 01878-85

Signed in Wausau, Wisconsin, this *14th* day of *December*, 1987.

EMPLOYERS INSURANCE OF WAUSAU A MUTUAL
COMPANY

BY *Robert H. Biza*

TITLE *Vice President*

NCP:caw
05/11/87-#64-27

- 2 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001040

and on behalf of the "Reassured", this _19_ day of _November_, 1983.

BY _[signature]_

TITLE _President_

TERMINATION ENDORSEMENT

to

CASUALTY EXCESS REINSURANCE CONTRACT

(CONTRACT EFFECTIVE JANUARY 1, 1985)

covering
$10,000,000 each occurrence
excess
$ 5,000,000 each occurrence

issued to

NEW HAMPSHIRE INSURANCE COMPANY
GRANITE STATE INSURANCE COMPANY
AMERICAN FIDELITY COMPANY
ILLINOIS NATIONAL INSURANCE COMPANY
AMERICAN GLOBAL INSURANCE COMPANY
INLAND NATIONAL INSURANCE COMPANY
NEW HAMPSHIRE INDEMNITY COMPANY, INC.
AUDUBON INSURANCE COMPANY
AMERICAN HOME ASSURANCE COMPANY
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA
BIRMINGHAM FIRE INSURANCE COMPANY
INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA
A.I.U. INSURANCE COMPANY
ALASKA INSURANCE COMPANY
A.I. LLOYD'S INSURANCE COMPANY
COMMERCE AND INDUSTRY INSURANCE COMPANY
MEMBER COMPANIES OF NORTH AMERICAN MANAGERS
and
THE NEW HAMPSHIRE QUOTA SHARE REINSURERS

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001041

Contract No. 01878 - 85

<u>ENDORSEMENT NO. 2</u>

to

<u>CASUALTY EXCESS REINSURANCE CONTRACT</u>

<u>(CONTRACT EFFECTIVE JANUARY 1, 1985)</u>

covering
$10,000,000 each occurrence
excess
$ 5,000,000 each occurrence

issued to

<u>NEW HAMPSHIRE INSURANCE COMPANY</u>
<u>GRANITE STATE INSURANCE COMPANY</u>
<u>AMERICAN FIDELITY COMPANY</u>
<u>ILLINOIS NATIONAL INSURANCE COMPANY</u>
<u>AMERICAN GLOBAL INSURANCE COMPANY</u>
<u>INLAND NATIONAL INSURANCE COMPANY</u>
<u>NEW HAMPSHIRE INDEMNITY COMPANY, INC.</u>
<u>AUDUBON INSURANCE COMPANY</u>
<u>AMERICAN HOME ASSURANCE COMPANY</u>
<u>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA</u>
<u>BIRMINGHAM FIRE INSURANCE COMPANY</u>
<u>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA</u>
<u>A.I.U. INSURANCE COMPANY</u>
<u>ALASKA INSURANCE COMPANY</u>
<u>A.I. LLOYD'S INSURANCE COMPANY</u>
<u>COMMERCE AND INDUSTRY INSURANCE COMPANY</u>
<u>MEMBER COMPANIES OF NORTH AMERICAN MANAGERS</u>
and
<u>THE NEW HAMPSHIRE QUOTA SHARE REINSURERS</u>

by

<u>EMPLOYERS INSURANCE OF WAUSAU A MUTUAL COMPANY</u>

Notwithstanding the terms of Article 3. H., it is understood and agreed that effective 12:01 a.m., Eastern Standard Time, January 1, 1985, Casualty business written by Division 58 and Division 31 of the American Home Group is covered hereunder.

All other terms and conditions remain unchanged.

- 1 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

*Contract 01878-85*

Signed in Wausau, Wisconsin, this 29th day of June, 1987.

EMPLOYERS INSURANCE OF WAUSAU A MUTUAL COMPANY

BY _____

TITLE _____Vice President_____

- 2 -

**TP&C** TOWERS, PERRIN, FORSTER & CROSBY

NCP:jw
11/12/86 - 64-#16

Wausau001043

*Contract  01878-85*

and on behalf of the "Reassured", this *7TH* day of *APRIL*, 198*7*.

BY _____

TITLE *SENIOR VICE PRESIDENT*

ENDORSEMENT NO. 2

to

CASUALTY EXCESS REINSURANCE CONTRACT

(CONTRACT EFFECTIVE JANUARY 1, 1985)

covering
$10,000,000 each occurrence
excess
$ 5,000,000 each occurrence

issued to

NEW HAMPSHIRE INSURANCE COMPANY
GRANITE STATE INSURANCE COMPANY
AMERICAN FIDELITY COMPANY
ILLINOIS NATIONAL INSURANCE COMPANY
AMERICAN GLOBAL INSURANCE COMPANY
INLAND NATIONAL INSURANCE COMPANY
NEW HAMPSHIRE INDEMNITY COMPANY, INC.
AUDUBON INSURANCE COMPANY
AMERICAN HOME ASSURANCE COMPANY
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA
BIRMINGHAM FIRE INSURANCE COMPANY
INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA
A.I.U. INSURANCE COMPANY
ALASKA INSURANCE COMPANY
A.I. LLOYD'S INSURANCE COMPANY
COMMERCE AND INDUSTRY INSURANCE COMPANY
MEMBER COMPANIES OF NORTH AMERICAN MANAGERS
and
THE NEW HAMPSHIRE QUOTA SHARE REINSURERS

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Contract No. 01878 — 85

ENDORSEMENT NO. 1

to

CASUALTY EXCESS REINSURANCE CONTRACT

(CONTRACT EFFECTIVE JANUARY 1, 1985)

covering
$10,000,000 each occurrence
excess
$ 5,000,000 each occurrence

issued to

NEW HAMPSHIRE INSURANCE COMPANY
GRANITE STATE INSURANCE COMPANY
AMERICAN FIDELITY COMPANY
ILLINOIS NATIONAL INSURANCE COMPANY
AMERICAN GLOBAL INSURANCE COMPANY
INLAND NATIONAL INSURANCE COMPANY
NEW HAMPSHIRE INDEMNITY COMPANY, INC.
AUDUBON INSURANCE COMPANY
AMERICAN HOME ASSURANCE COMPANY
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA
BIRMINGHAM FIRE INSURANCE COMPANY
INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA
A.I.U. INSURANCE COMPANY
ALASKA INSURANCE COMPANY
A.I. LLOYD'S INSURANCE COMPANY
COMMERCE AND INDUSTRY INSURANCE COMPANY
MEMBER COMPANIES OF NORTH AMERICAN MANAGERS
and
THE NEW HAMPSHIRE QUOTA SHARE REINSURERS

by

EMPLOYERS INSURANCE OF WAUSAU A MUTUAL COMPANY

It is understood and agreed that effective 12:01 a.m., Eastern Standard Time, January 1, 1985, Exclusion (3) of Article 3. B. is hereby waived in respect of the Mississippi Lock and Dam (Alton, Illinois) Project. In consideration of this waiver, an annual premium of $75,000 shall be paid to Reinsurers.

All other terms and conditions remain unchanged.

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001045

Contract O18.78-85

Signed in Wausau, Wisconsin, this 24th day of June , 1987.

EMPLOYERS INSURANCE OF WAUSAU A MUTUAL
COMPANY

BY _Norbert A Berg_

TITLE _Exec. President_

NCP:jw
11/12/86 - 64-#15

TPF&C TOWERS, PERRIN, FORSTER & CROSBY.

Wausau001046

*Contract 01878-85*

and on behalf of the "Reassured", this *7TH* day of *APRIL*, 198*7*.

BY ~~James A. Fuller~~

TITLE *SENIOR VICE PRESIDENT*


ENDORSEMENT NO. 1

to

CASUALTY EXCESS REINSURANCE CONTRACT

(CONTRACT EFFECTIVE JANUARY 1, 1985)

covering
$10,000,000 each occurrence
excess
$ 5,000,000 each occurrence

issued to

NEW HAMPSHIRE INSURANCE COMPANY
GRANITE STATE INSURANCE COMPANY
AMERICAN FIDELITY COMPANY
ILLINOIS NATIONAL INSURANCE COMPANY
AMERICAN GLOBAL INSURANCE COMPANY
INLAND NATIONAL INSURANCE COMPANY
NEW HAMPSHIRE INDEMNITY COMPANY, INC.
AUDUBON INSURANCE COMPANY
AMERICAN HOME ASSURANCE COMPANY
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA
BIRMINGHAM FIRE INSURANCE COMPANY
INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA
A.I.U. INSURANCE COMPANY
ALASKA INSURANCE COMPANY
A.I. LLOYD'S INSURANCE COMPANY
COMMERCE AND INDUSTRY INSURANCE COMPANY
MEMBER COMPANIES OF NORTH AMERICAN MANAGERS
and
THE NEW HAMPSHIRE QUOTA SHARE REINSURERS

**TP&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001047

Contract No. 01878 - 85

<u>CASUALTY EXCESS REINSURANCE CONTRACT</u>
<u>(CONTRACT EFFECTIVE JANUARY 1, 1985)</u>

$10,000,000 excess $5,000,000 each occurrence

issued to

<u>NEW HAMPSHIRE INSURANCE COMPANY</u>
<u>GRANITE STATE INSURANCE COMPANY</u>
<u>AMERICAN FIDELITY COMPANY</u>
<u>ILLINOIS NATIONAL INSURANCE COMPANY</u>
<u>AMERICAN GLOBAL INSURANCE COMPANY</u>
<u>INLAND NATIONAL INSURANCE COMPANY</u>
<u>NEW HAMPSHIRE INDEMNITY COMPANY, INC.</u>
<u>AUDUBON INSURANCE COMPANY</u>
<u>AMERICAN HOME ASSURANCE COMPANY</u>
<u>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA</u>
<u>BIRMINGHAM FIRE INSURANCE COMPANY</u>
<u>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA</u>
<u>A.I.U. INSURANCE COMPANY</u>
<u>ALASKA INSURANCE COMPANY</u>
<u>A.I. LLOYD'S INSURANCE COMPANY</u>
<u>COMMERCE AND INDUSTRY INSURANCE COMPANY</u>
<u>MEMBER COMPANIES OF NORTH AMERICAN MANAGERS</u>
and
<u>THE NEW HAMPSHIRE QUOTA SHARE REINSURERS</u>

(hereinafter called the "Reassured")

by

<u>EMPLOYERS INSURANCE OF WAUSAU A MUTUAL COMPANY</u>

<u>WAUSAU, WISCONSIN</u>

(hereinafter called, with other participants, the "Reinsurers")

Under the terms of this contract the above Reinsurer agrees to assume severally and not jointly with other participants

a 5.00% share

of the liability described in the attached contract and, as consideration, the Reinsurer shall receive a 5.00% share of the premium named therein.

- 1 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Contract 01878-85

Signed in Wausau, Wisconsin, this 24th day of June , 1987.

EMPLOYERS INSURANCE OF WAUSAU A MUTUAL
COMPANY

BY _____

TITLE _Vice President_

- 2 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY.

Wausau001049

Contract 01878-85

and on behalf of the "Reassured", this *7TH* day of *APRIL* , 198*7*.

BY *James A. Fuller*

TITLE *SENIOR VICE PRESIDENT*

CASUALTY EXCESS REINSURANCE CONTRACT

(CONTRACT EFFECTIVE JANUARY 1, 1985)

covering
$10,000,000 each occurrence
excess
$ 5,000,000 each occurrence

issued to

NEW HAMPSHIRE INSURANCE COMPANY
GRANITE STATE INSURANCE COMPANY
AMERICAN FIDELITY COMPANY
ILLINOIS NATIONAL INSURANCE COMPANY
AMERICAN GLOBAL INSURANCE COMPANY
INLAND NATIONAL INSURANCE COMPANY
NEW HAMPSHIRE INDEMNITY COMPANY, INC.
AUDUBON INSURANCE COMPANY
AMERICAN HOME ASSURANCE COMPANY
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA
BIRMINGHAM FIRE INSURANCE COMPANY
INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA
A.I.U. INSURANCE COMPANY
ALASKA INSURANCE COMPANY
A.I. LLOYD'S INSURANCE COMPANY
COMMERCE AND INDUSTRY INSURANCE COMPANY
MEMBER COMPANIES OF NORTH AMERICAN MANAGERS
and
THE NEW HAMPSHIRE QUOTA SHARE REINSURERS

**TP&C** TOWERS, PERRIN, FORSTER & CROSBY.

*Contract 01878-85*

NEW HAMPSHIRE INSURANCE COMPANY
GRANITE STATE INSURANCE COMPANY
AMERICAN FIDELITY COMPANY
ILLINOIS NATIONAL INSURANCE COMPANY
AMERICAN GLOBAL INSURANCE COMPANY
INLAND NATIONAL INSURANCE COMPANY
NEW HAMPSHIRE INDEMNITY COMPANY, INC.
AUDUBON INSURANCE COMPANY
AMERICAN HOME ASSURANCE COMPANY
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA
BIRMINGHAM FIRE INSURANCE COMPANY
INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA
A.I.U. INSURANCE COMPANY
ALASKA INSURANCE COMPANY
A.I. LLOYD'S INSURANCE COMPANY
COMMERCE AND INDUSTRY INSURANCE COMPANY
MEMBER COMPANIES OF NORTH AMERICAN MANAGERS
and
THE NEW HAMPSHIRE QUOTA SHARE REINSURERS

CASUALTY EXCESS REINSURANCE CONTRACT

covering
$10,000,000 each occurrence
excess
$ 5,000,000 each occurrence

PREAMBLE

    The Reinsurers hereby reinsure subject to the terms and conditions contained herein, the excess liability of the Reassured resulting from loss occurrences arising during the term of this contract from business classified by the Reassured as Casualty Business.

TERM

1.  A.  This contract which continues and replaces the Reassured's previous Casualty Excess covering $10,000,000 each occurrence excess of $5,000,000 each occurrence shall be effective January 1, 1985, at 12:01 a.m., Eastern Standard Time, and shall remain in force continuously thereafter until cancelled at any time by mutual consent or at any January 1 anniversary by either party giving to the other at least 90 days' prior notice in writing.

    B.   Should either party to this contract at any time:

        (1)  Become insolvent, or

        (2)  Suffer any impairment of capital, or

        (3)  File a petition in bankruptcy, or

        (4)  Go into liquidation or rehabilitation, or

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001051

(5)  Have a receiver appointed, or

(6)  Be acquired or controlled by any other insurance company or organization,

the other party shall have the right to terminate this contract forthwith by notice in writing to the first party.

C.   In the event of the severance or obstruction of free and unfettered communication and/or normal commercial and/or financial intercourse between the United States of America and the country in which a Reinsurer is incorporated or has its principal office as a result of war, currency regulations, or any circumstances arising out of political, financial or economic emergency, the Reassured may terminate this contract by notice in writing to such Reinsurer.

D.   If this contract is terminated, the Reinsurers shall nevertheless be liable for any and all claims from loss occurrences arising during the term of this contract until final settlement of all such claims.

E.   Should this contract terminate while a loss occurrence is in progress the Reinsurers shall nevertheless be liable, to the extent of their interest and subject to the other conditions of this contract, for all losses resulting from such loss occurrence, whether such losses arise before or after such termination.

DEFINITION OF POLICIES

2.      The term "policies" wherever used herein shall mean all binders, policies, contracts, and other obligations of insurance and reinsurance heretofore issued or which may hereafter be issued by the Reassured.

EXCLUSIONS

3. A.   This contract shall not apply to business classified by the Reassured as:

(1)  Fidelity and Surety;

(2)  Kidnap and Ransom;

(3)  Directors' and Officers' Liability when written as such except with respect to Condominiums and apartment houses;

(4)  Fiduciary Liability when written as such;

(5)  Financial Guaranty and Insolvency;

(6)  Aviation Products and Liability;

(7)  General Bodily Injury Liability in respect of the operations of Common Carriers that transport farepaying passengers;

(8)  Vehicles used in speed contests or races, or to haul explosive substances (as defined below in Paragraph B);

- 2 -      **TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

(9)  S.E.C., Liability;

(10)  Atomic Energy Operations;

(11)  All forms of Legal Liability arising out of the operation or navigation of ships or vessels other than:

    a.  Yachts, small pleasure craft, sports fishing vessels;

    b.  Off-shore Oil Rigs;

    c.  Legal Liability of shipowners to passengers and/or crews of vessels owned or operated by them;

    d.  Ship repairers liability;

    e.  Stevedores liability;

    f.  Legal liability of others to Harbour Authorities;

    g.  Vessels operating exclusively in inland and/or coastal water where legal liability on such vessels is incidental to the coverage provided either under a general liability policy or under a comprehensive form of policy.

B.  As respects Workers' Compensation and Employers' Liability business, this contract shall not apply to:

(1)  Underground Mining Operations;

(2)  Working or navigation of ocean-going vessels of a registered gross tonnage in excess of 2,000 tons and all submarines.  This exclusion, however, shall not apply to:

    a.  A vessel (other than a submarine) operated by employees of a shipbuilder during trial trips following construction or repair by such shipbuilder;

    b.  Dredging operations even though the dredges are self-propelled or over 2,000 tons;

    c.  Fixed or standing operating drilling rigs which are in excess of 2,000 tons.  However, coverage does not apply to these drilling rigs during voyages or movement except when the drilling rigs are being relocated within the drilling area;

    d.  Small manned submarines used in conjunction with diving operations covered by the Reassured.

(3)  Construction work on cofferdams or caissons, or tunnelling in excess of fifty feet;

- 3 -    **TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001053

(4) Subaqueous work under pressure. This exclusion, however, shall not apply to deep sea divers covered by the Reassured as part of the construction risk and normal drilling operations;

(5) Railroads written as such;

(6) Operations involving explosives as follows:

    a.   Manufacturers of any explosive substance (as defined below) intended for use as an explosive;

    b.   The loading of any explosive substance (as defined below) into containers for use as explosive objects, propellant charges or detonating devices, and the storage thereof;

    c.   Manufacturing of any product, including but not limited to Fireworks and Fuses, in which any explosive substance (as defined below) is an ingredient;

    d.   The processing or destruction of any explosive substance (including storage in connection therewith);

    An explosive substance is defined as any substance the express purpose of which is to explode, as differentiated from commodities used industrially and which are only incidentally explosive such as, but not limited, to gasoline, celluloid, fuel gases and dyestuffs.

(7) Risks involving the handling, production, utilization or transportation of any Nuclear or Atomic material unless such an involvement is incidental in nature to the assured's principal operation.

C.   The exclusions listed above in Paragraph B (1) and (3) shall be waived in respect of Peter Kiewit Sons - Sponsored joint ventures.

D.   The exclusion listed above in Paragraph B (3) shall be waived in respect of Peter Kiewit Sons Kodiak Alaska and Alabama Power-Mitchell Dam Projects.

E.   The exclusions listed above in Paragraph B shall not be considered applicable where the excluded class or operation constitutes (1) a minor and incidental part of an assured's regular business operations or (2) where the Reassured is obligated to cover the operations by reason of its participation in any voluntary or assigned risk pool or similar plan.

F.   This contract also shall not apply to:

(1) Excess of Loss Reinsurance; but this exclusion does not apply to liability accepted by the Reassured by way of insurance or reinsurance in respect of excess of loss insurance nor to acceptances of reinsurances on specific risks nor to 100% reinsurances of policies issued by other companies;

- 4 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

(2) Loss or liability excluded by the provisions of the "Nuclear Incident Exclusion Clause - Liability - Reinsurance" and "Nuclear Incident Exclusion Clause - Physical Damage and Liability (Boiler & Machinery) - Reinsurance" attached to and forming part of this contract.

(3) All liability of the Reassured arising, by contract, operation of law, or otherwise, from its participation or membership, whether voluntary or involuntary, in any insolvency fund. "Insolvency fund" includes any guaranty fund, insolvency fund, plan, pool, association, fund or other arrangement, howsoever denominated, established or governed, which provides for any assessment of or payment or assumption by the Reassured of part or all of any claim, debt, charge, fee, or other obligation of an insurer, or its successors or assigns, which has been declared by any competent authority to be insolvent, or which is otherwise deemed unable to meet any claim, debt, charge, fee or other obligation in whole or in part.

G.   If the Reassured should inadvertently be bound on a risk excluded in Paragraph A of this Article [other than risks excluded by A(1), (2), (5) and (10)] and the risk is not reinsured elsewhere, such risk will be covered hereunder for a period not exceeding the cancellation notice period in the original policy, such period to begin upon receipt of knowledge of such risk by the Home Office of the Reassured.

H.   As respects the Casualty business of the American Home Group (comprised of AMERICAN HOME ASSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY, OF PITTSBURGH, PENNSYLVANIA, BIRMINGHAM FIRE INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA and A.I.U. INSURANCE COMPANY) covered hereunder, it is understood that:

(1) This contract shall not apply to business other than Workers' Compensation, Employers' Liability and Third Party Liability written through the Group's so-called Divisions 2, 5, 5A, 5B, 59, 82 and A.I.G. Global Accounts Department and the Casualty business of the Group's Commercial Property Division, it being understood that this contract is not to apply to A.I.G. Global Accounts Department exposures which are outside the U.S.A., its territories, possessions and Canada. In the event a loss occurs involving Workers' Compensation, Employers' Liability or Third Party Liability coverages under policies classified by the Reassured as Division 5/5A/5B/59 business and policies classified by the Reassured as Division 3/3A business, this exclusion shall not apply.

(2) Any Domestic Insurance Company which has been acquired by the American International Group and for which the above-mentioned Divisions 2, 5, 5A, 5B, 59, 82 and A.I.G. Global Accounts or Commercial Property Division may underwrite the business specified in Item (1) of this Paragraph shall be automatically covered hereunder for a period of forty-five days from the date of acquisition. After such forty-five day period has expired, the coverage shall cease unless, during the aforementioned period, the

- 5 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY.

Wausau001055

Reassured and the Reinsurers shall be mutually agreed as respects any alteration which might be required in the existing terms of this contract.

I.   As respects the Casualty business written by North American Managers on behalf of its Member Companies, only that business classified as Primary Casualty shall be covered hereunder.

RETENTION AND LIMIT

4. A.   The Reinsurers shall be liable in each and every loss occurrence for 100% of the excess net loss above an initial net loss to the Reassured of $5,000,000; but the Reinsurers shall not be liable for more than $10,000,000 in each and every such loss occurrence.

B.   Notwithstanding the provisions of Paragraph A of this Article, where the Reassured's original policies provide for aggregate limits of liability, this contract shall cover (with respect to each peril or project subject to an aggregate limit) excess of $5,000,000 in the aggregate any one original policy during each original aggregate period; but the Reinsurers shall not be liable for more than $10,000,000 in the aggregate any one original policy during each original aggregate period.

C.   As respects occupational or other diseases, this contract shall cover excess of $5,000,000 in the aggregate any one original policy during each original aggregate period for losses sustained by the Reassured resulting from occupational or other diseases suffered by one or more employees of each original assured; but the Reinsurers shall not be liable for more than $10,000,000 in the aggregate any one original policy during each original aggregate period.  This contract shall apply only to losses arising from cases where an employee's cessation from work first occurs during an original aggregate period covered hereunder.

D.   As respects aggregate coverage afforded in Paragraphs B. and C. above, this contract shall apply to the whole of each original aggregate period, not exceeding twelve months, and notwithstanding the termination or expiration of this contract provided the inception of such original aggregate period commences during the term of this contract.

E.   The term "original aggregate period" as used in Paragraph D. above, shall mean each separate policy period, not exceeding twelve months, commencing at the inception, anniversary or renewal date after January 1, 1985.

F.   The term "aggregate" shall mean the ultimate net loss incurred in the aggregate during any one original aggregate period.

G.   Except as provided in Paragraph D. above, in event of termination of this contract, liability hereunder shall cease in respect of the unexpired portions of the Reassured's original policies.

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001056

DEFINITION OF LOSS OCCURRENCE

5. A.   The term "loss occurrence" as used in this contract shall be construed to mean any one accident, disaster, casualty or occurrence or series of accidents, disasters, casualties or occurrences arising out of or caused by one event regardless of the number of interests insured or the number or kinds of perils involved.

B.   As respects Workers' Compensation business covered hereunder, a loss must involve at least two claimants, each with a claim of $20,000 or more for such loss to be considered a loss occurrence subject to this contract. However, this requirement is waived in the event the loss also involves a claim or claims from business covered hereunder other than Workers' Compensation.

DEFINITION OF NET LOSS

6. A.   The term "net loss" shall mean the amount payable by the Reassured in settlement of losses or liability, such amount to include expenses of litigation, if any, salvage and subrogation expenses, interest on judgements, and all other legal and loss expenses of the Reassured (except internal office expenses).

B.   All salvages and all recoveries are to be first deducted from such loss to arrive at the amount of liability, if any, attaching hereunder. Nothing, however, in this clause shall be construed to mean that losses are not recoverable until the Reassured's net loss has been ascertained; and nothing shall be construed to limit the net loss of the Reassured in the event of a judgement against the Reassured in excess of the limits of the Reassured's liability as stated in its policies concerned, subject always to the limits of this contract.

C.   If a verdict or judgement is reversed or reduced, the Reassured and the Reinsurers shall contribute to the expenses incurred in securing such reduction or reversal in the proportion that the Reassured and the Reinsurers respectively benefit therefrom, with the expenses incurred up to the time of the original verdict or judgement being shared in proportion to what would have been each party's share thereof.

D.   It is understood and agreed that the maximum amount of net loss hereunder that is applicable to Division 3/3A in any loss occurrence is $5,000,000.   It is also understood and agreed that for a loss occurrence involving Division 5/5A/5B//59 policies and Division 3/3A policies to be recoverable hereunder, the Division 5/5A/5B/59 portion of the loss must be attributable at least in part to a claim or claims classified by the Reassured as Workers' Compensation or Employers' Liability.   It is warranted, if a loss occurs which involves Division 5/5A/5B/59 and Division 3/3A policies that the American International Group retains at least $1,000,000 net for its own account in each loss occurrence covered hereunder, or so deemed.

- 7 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY,

Wausau001057

## NET RETAINED LINES

7.  A.  This contract applies only to that portion of any insurance or reinsurance which the Reassured retains net for its own and its Quota Share reinsurers' account; and, in calculating the amount of loss hereunder and also in computing the amount or amounts in excess of which this contract attaches, only loss or losses in respect of that portion of any insurance or reinsurance which the Reassured retains net for its own account shall be included.

B.  The amount of the Reinsurers' liability hereunder in respect of any loss or losses shall not be increased by reason of the inability of the Reassured to collect from any other reinsurers, whether specific or general, any amounts which may become due from them, whether such inability arises from the insolvency of such other reinsurers or otherwise.

C.  It is understood and agreed that recoveries by the Reassured from underlying Excess of Loss Reinsurance shall be entirely disregarded for all purposes of this contract and shall inure to the sole benefit of the Reassured.

D.  It is understood and agreed that recoveries from Quota Share Reinsurance Treaties shall be entirely disregarded for all purposes of this contract.

## LOSSES

8.  A.  The Reassured will advise the Reinsurers promptly of all loss occurrences which, in the opinion of the Reassured, may result in a claim hereunder and of all subsequent developments thereto which, in the opinion of the Reassured may materially affect the position of the Reinsurers.

B.  Inadvertent omission or oversight in dispatching such notice shall in no way affect the liability of the Reinsurers under this contract, provided the Reassured informs the Reinsurers of such omission or oversight promptly upon its discovery.

C.  All loss settlements made by the Reassured, provided they are within the terms of this contract, shall be unconditionally binding upon the Reinsurers, who agree to pay all amounts for which they may be liable immediately upon being furnished by the Reassured with reasonable evidence of the amount due or to be due.

## PREMIUM

9.  A.  The premium to the Reinsurers for this contract shall be calculated by applying a rate of .3973% to the Reassured's earned premium income for each contract period this reinsurance is in force. As consideration for the coverage afforded hereunder, in the event a loss occurs which involves Division 3/3A policies and Division 5/5A/5B/59 policies, a separate flat annual premium of $100,000 shall be paid to Reinsurers in equal quarterly installments of $25,000 each.

B.  The term "earned premium income" shall mean gross earned premiums on business covered hereunder less premiums earned on reinsurance, recoveries under which would reduce the loss to this contract.

- 8 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001058

C.   A minimum and deposit premium of $2,000,000 shall be paid to the Reinsurers in four equal quarterly installments of $500,000 for each twelve month contract period this reinsurance remains in force.   As promptly as possible following the end of each contract period, the Reassured shall render a statement to the Reinsurers showing the actual reinsurance premiums due hereunder, calculated as provided in Paragraphs A and B of this Article; and, if the premium so calculated is greater than the minimum and deposit premium, the additional premium shall thereupon be paid to the Reinsurers.

D.   As consideration for waiver of Exclusion B (3) in respect of the Peter Kiewit Sons Kodiak Alaska Joint Venture, an annual premium of $30,000 or pro rata thereof should the project be completed prior to the end of the annual period, shall be paid to Reinsurers.

## CURRENCY

10.   All of the provisions of this contract involving dollar amounts shall be construed to mean United States Dollars, and all premium and loss payments shall be made in United States Dollars, except in those cases where the policies are issued by the Company in Canadian Dollars in which cases they shall mean Canadian Dollars.   For all purposes of this contract, amounts paid or received by the Reassured in currency other than United States or Canadian Dollars shall be converted into United States Dollars at the rate of exchange at which such transactions are converted in the books of the Reassured.

## TAX PROVISIONS   (A and B applicable to the participation of Reinsurers subject to Federal Excise Tax)

11. A.   The Reinsurers have agreed to allow, for the purpose of paying the Federal Excise Tax, one per cent of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

B.   In the event of any return of premium becoming due hereunder, the Reinsurers will deduct one per cent from the amount of the return; the Reassured or its broker hereunder should take steps to recover the tax from the U.S. Government.

C.   In consideration of the terms under which this contract is issued, the Reassured undertakes not to claim any deduction of the premium hereon when making Canadian Tax returns or when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States of America or to the District of Columbia.

## ACCESS TO REASSURED'S RECORDS

12.   The Reinsurers or their duly appointed representatives shall have free access at all reasonable times to such books and records of the Reassured and its departmental or branch offices as shall reflect premium and loss transactions of the Reassured for the purpose of obtaining any and all information concerning this contract or the subject matter hereof.

- 9 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001059

## INTERMEDIARY.

13.     Towers, Perrin, Forster & Crosby, Inc. is hereby recognized as the Intermediary negotiating this contract for all business hereunder.   All communications (including but not limited to notices, statements, premiums, return premiums, commissions, taxes, losses, loss adjustment expense, salvages, and loss settlements) relating thereto shall be transmitted to the Reassured or the Reinsurer through Towers, Perrin, Forster & Crosby, Inc., Eleven Penn Center, 1835 Market Street, Philadelphia, Pennsylvania 19103-2965.  Payments by the Reassured to the Intermediary shall constitute payment to the Reinsurer to the extent of such payments.   Payments by the Reinsurer to the Intermediary shall only constitute payment to the Reassured to the extent that such payments are actually received by the Reassured.

## INSOLVENCY

14. A.   In the event of the insolvency of the Reassured, this reinsurance shall be payable directly to the Reassured, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Reassured without diminution because of the insolvency of the Reassured or because the liquidator, receiver, conservator or statutory successor of the Reassured has failed to pay all or a portion of any claim.  It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Reassured shall give written notice to the Reinsurers of the pendency of a claim against the Reassured which would involve a possible liability on the part of the Reinsurers, indicating the policy or bond reinsured, within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership.  It is further agreed that during the pendency of such claim the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defense or defenses that they may deem available to the Reassured or its liquidator, receiver, conservator, or statutory successor.  The expense thus incurred by the Reinsurers shall be chargeable, subject to the approval of the court, against the Reassured as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Reassured solely as a result of the defense undertaken by the Reinsurers.

B.     Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of the reinsurance agreement as though such expense had been incurred by the Reassured.

C.   The reinsurance shall be payable by the Reinsurers to the Reassured or to its liquidator, receiver, conservator, or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of the insolvency of the Reassured, and (b) where the Reinsurers with the consent of the direct insured or insureds have assumed such policy obligations of the Reassured as direct obligations of the Reinsurers to the payees under such policies and in substitution for the obligations of the Reassured to the payees.

- 10 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY.

ARBITRATION

15: A.   All disputes or differences arising out of the interpretation of this contract shall be submitted to the decision of two arbitrators, one to be chosen by each party and in the event of the arbitrators failing to agree, to the decision of an umpire to be chosen by the arbitrators.   The arbitrators and umpire shall be disinterested active or retired executive officials of fire or casualty insurance or reinsurance companies.   If either of the parties fails to appoint an arbitrator within one month after being required by the other party in writing to do so, or if the arbitrators fail to appoint an umpire, within one month of a request in writing by either of them to do so, such arbitrator or umpire, as the case may be, shall at the request of either party be appointed by a Justice of the Supreme Court of the State of New York.

B.   The Arbitration proceeding shall take place in New York, New York.   The applicant shall submit its case within one month after the appointment of the court of arbitration, and the respondent shall submit his reply within one month after the receipt of the claim.   The arbitrators and umpire are relieved from all judicial formality and may abstain from following the strict rules of law. They shall settle any dispute under the contract according to an equitable rather than a strictly legal interpretation of its terms.

C.   Their written decision shall be provided to both parties and shall be final and not subject to appeal.

D.   Each party shall bear the expenses of its arbitrator and shall jointly and equally share with the other expenses of the umpire and of the arbitration.

E.   This Article shall survive the termination of this contract.

SERVICE OF SUIT (Not applicable to the participation of any Domestic Reinsurer)

16. A.   In the event of the failure of Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers, at the request of the Reassured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

B.   Service of process in such suit may be made upon Mendes & Mount, 3 Park Avenue, New York, New York, 10016; and, in any suit instituted against it upon this contract, Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

C.   The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of the Reassured to give a written undertaking to the Reassured that they will enter a general appearance on behalf of the Reinsurers in the event such a suit shall be instituted.

D.   Further, pursuant to any statute of any State, Territory, or District of the United States which makes provision therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or

- 11 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001061

successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Reassured or any beneficiary hereunder arising out of this contract and hereby designate the above-named Mendes & Mount as the firm to whom the said officer is authorized to mail such process or a true copy thereof.

LOSS RESERVES (U.S. Dollar Reinsurances Letters of Credit)

(This Clause is only applicable to those Reinsurers who cannot qualify for credit by the State having jurisdiction over the Reassured's loss reserves.)

17.     As regards policies or bonds issued by the Reassured coming within the scope of this contract, the Reassured agrees that when it shall file with the Insurance Department or set up on its books reserves for losses covered hereunder which it shall be required to set up by law, it will forward to the Reinsurers a statement showing the proportion of such loss reserves which is applicable to them.  The Reinsurers hereby agree that they will apply for and secure delivery to the Reassured a clear irrevocable Letter of Credit issued by an American bank acceptable to such Insurance Department in an amount equal to Reinsurers' proportion of said loss reserves.

The Reassured undertakes to use and apply any amounts which it may draw upon such Credit pursuant to the terms of the contract under which the Letter of Credit is held, and for the following purposes only:

a.    To pay the Reinsurers' share or to reimburse the Reassured for the Reinsurers' share of any liability for loss reinsured by this contract.

b.    To make refund of any sum which is in excess of the actual amount required to pay Reinsurers' share of any liability reinsured by this contract.

Such bank shall have no responsibility whatsoever in connection with the propriety of withdrawals made by the Reassured or the disposition of funds withdrawn, except to see that withdrawals are made only upon the order of properly authorized representatives of the Reassured.

COMMUTATION OF WORKERS' COMPENSATION CLAIMS

18.    As respects claims for Workers' Compensation, it is agreed that 36 months after the expiration of each contract period, the Reassured shall advise the Reinsurers of any claims which may not have been finally settled and which may result in a claim under this Contract.

The Reinsurers may then or at any time thereafter demand that the Reassured make a final claim against Reinsurers in respect of such unsettled claims.  In that event, the Reassured and the Reinsurers shall mutually appoint an actuary or appraiser who shall investigate, determine and capitalize any such unsettled claim.  The payment of the Reinsurers' proportion of this sum shall constitute complete release of the Reinsurers for such claim or claims so valued.

- 12 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

## EXCESS OF ORIGINAL POLICY LIMITS

19.     This contract shall protect the Reassured, within the limits hereof, in connection with net loss in excess of the limit of its original policy, such loss in excess of the limit having been incurred because of failure by it to settle within the policy limit or by reason of alleged or actual negligence or bad faith in rejecting an offer of settlement or in the preparation of the defense or in the trial of any action against its Insured or Reinsured or in the preparation or prosecution of an appeal consequent upon such action.

However, this Article shall not apply where the loss has been incurred due to the fraud of a member of the Board of Directors, a corporate officer of the Company or any other employee with claims settlement authority, acting individually or collectively or in collusion with any individual or corporation or any other organization or party involved in the presentation, defense or settlement of any claim covered hereunder.

For the purpose of this Article, the word "loss" shall mean any amounts for which the Reassured would be contractually liable to pay, had it not been for the limit of the original policy.

## EXTRA CONTRACTUAL OBLIGATIONS

20.     The Reinsurers agree to indemnify the Reassured for 80% of any Extra Contractual Obligation losses.  Such losses shall be included in the ultimate net loss hereunder, subject to the limit of this contract.  The Reassured agrees to carry, at its own risk and not reinsured in any way, the remaining 20% of any Extra Contractual Obligation losses for which claim is made hereunder.

"Extra Contractual Obligations" are defined as those liabilities not covered under any other provision of this contract and which arise from the handling of any claim on business covered hereunder, such liabilities arising because of, but not limited to, the following:

Failure by the Reassured to settle within the policy limit, or by reason of alleged or actual negligence, or bad faith in rejecting an offer of settlement or in the preparation of the defense or in the trial of any action against its Insured or Reinsured or in the preparation or prosecuting of an appeal consequent upon such action.

The date on which any Extra Contractual Obligations is incurred by the Reassured shall be deemed, in all circumstances, to be the date of the original accident, casualty, disaster or loss occurrence.

However, this Article shall not apply where the loss has been incurred due to the fraud of a member of the Board of Directors, a corporate officer of the Company or any other employee with claims settlement authority, acting individually or collectively or in collusion with any individual or corporation or any other organization or party involved in the presentation, defense or settlement of any claim covered hereunder.

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY.

Wausau001063

## FOLLOW THE FORTUNES

21.     The Reinsurers' liability shall attach simultaneously with that of the Reassured, and shall be subject in all respects to the same risks, terms, conditions, interpretations, waivers, and to the same modifications, alterations and cancellations, as the respective insurances (or reinsurances) of the Reassured, the true intent of this contract being that the Reinsurers shall, in every case to which this contract applies, follow the fortunes of the Reassured.

## SELF-INSURED OBLIGATIONS

22.     As respects all business the subject matter hereof, where the coverage has been agreed upon between the Reassured and the Reinsurers this contract shall cover all obligations of the Reassured assumed by it as a self-insurer (or self insured obligations in excess of any valid and collectible insurance available to the Reassured) to the same extent as if all types of insurance covered by this contract were afforded under the broadest form of agreements issued by the Reassured.

An insurance or reinsurance wherein the Reassured hereby reinsured and/or its affiliated and/or subsidiary Companies are named as the Insured or Reinsured party, whether alone or jointly with some other party, shall be deemed to be an insurance or reinsurance coming within the scope of this contract, notwithstanding that no legal liability may arise in respect thereof by reason of the fact that the Reassured hereby reinsured and/or its affiliated and/or subsidiary Companies are named as the Insured or Reinsured party or one of the Insured or Reinsured parties.

## OFFSET

23.     Each party hereto shall have, and may exercise at any time and from time to time, the right to offset any balance or balances, whether on account of premiums or on account of losses or otherwise, due from such party to the other (or, if more than one, any other) party hereto under this contract or under any other reinsurance agreement heretofore or hereafter entered into by and between them, and may offset the same against any balance or balances due or to become due to the former from the latter under the same or any other reinsurance agreement between them; and the party asserting the right of offset shall have and may exercise such right whether the balance or balances due or to become due to such party from the other are on account of premiums or on account of losses or otherwise and regardless of the capacity, whether as assuming insurer or as ceding insurer, in which each party acted under the agreement or, if more than one, the different agreements involved, provided, however, that, in the event of the insolvency of a party hereto, offsets shall only be allowed in accordance with the provisions of Section 538 of the Insurance Law of the State of New York.

- 14 -

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

NCP:jw
2/9/87 -64-#16

Wausau001064

U.S.A.

# Nuclear Incident Exclusion Clause—Liability—Reinsurance

1. This reinsurance does not cover any loss of liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

2. Without in any way restricting the operation of paragraph 1 of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph 2 from the time specified in Clause III in this paragraph 2 shall be deemed to include the following Exclusion (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

I. It is agreed that the policy does not apply under any liability coverage, to { *injury, sickness, disease, death or destruction* with respect { bodily injury or property damage

   to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

   (a) become effective on or after 1st May, 1960, or

   (b) become effective before this date and contain the Limited Exclusion Provision set out above;

   provided this paragraph 2 shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies of combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

3. Except for those classes of policies specified in Clause II of paragraph 2 and without in any way restricting the operation of paragraph 1 of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages;

   Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability);

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph 3, the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to { *injury, sickness, disease, death or destruction* { bodily injury or property damage

   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to { *immediate medical or surgical relief,* { first aid,

   to expenses incurred with respect to { *bodily injury, sickness, disease or death* resulting from the hazardous properties of nuclear material { bodily injury

   and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to { *injury, sickness, disease, death or destruction* resulting from the hazardous properties of nuclear { bodily injury or property damage

   material, if

   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (c) the { *injury, sickness, disease, death or destruction* arises out of the furnishing by an insured of services, materials, parts or equipment { bodily injury or property damage

   in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories, or possessions or Canada, this exclusion (c) applies only

   to { *injury to or destruction of property at such nuclear facility.* { property damage to such nuclear facility and any property thereat.

IV. As used in this endorsement:

   "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY

Wausau001065

material other than tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*With respect to injury to or destruction of property, the word "injury" or "destruction"*
*"property damage" includes all forms of radioactive contamination of property.*
*includes all forms of radioactive contamination of property.*

V.  The inception dates and thereafter of all original policies affording coverages specified in this paragraph 3, whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph 3 shall not be applicable to

(i)  Garage and Automobile Policies issued by the Reassured on New York risks, or

(ii)  statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

4.  Without in any way restricting the operation of paragraph 1 of this Clause, it is understood and agreed that paragraphs 2 and 3 above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

*NOTE. The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

Rev.

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY,

U.S.A.

## Nuclear Incident Exclusion Clause–Physical Damage and Liability (Boiler and Machinery)–Reinsurance.

1. This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

2. Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all original Boiler and Machinery Insurance or Reinsurance contracts of the Reassured shall be deemed to include the following provisions of this paragraph:

This Policy does not apply to "loss," whether it be direct or indirect, proximate or remote

(a) from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or

(b) from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

3. However, it is agreed that loss arising out of the use of radioactive isotopes in any form is not hereby excluded from reinsurance protection.

4. Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

(a) all policies issued by the Reassured effective on or before 30th April, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th April, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

(b) with respect to any risk located in Canada policies issued by the Reassured effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

**TPF&C** TOWERS, PERRIN, FORSTER & CROSBY.

Wausau001067

# Exhibit C

**Resolute** Management

Janet L. Harrison, CPA
817-680-5812
jharrison@resolutemgmt.com

100 First Stamford Place
Stamford, CT 06902

November 13, 2015

Via E-mail

Hannah Huryk
Employers Insurance Company of Wausau

## DEMAND FOR ARBITRATION

### National Union Fire Insurance Company / Employers Insurance Company of Wausau

### Casualty Third Excess Reinsurance Contract

### California Portland Cement – Policy GLA 196-03-18RA

Dear Sirs:

By this letter, National Union Fire Insurance Company ("National Union Fire") hereby demands and initiates arbitration against Employers Insurance Company of Wausau ("Wausau") (f/k/a Employers Insurance of Wausau a Mutual Company), pursuant to the relevant arbitration provisions in the above-referenced treaty.  National Union Fire will request the panel of arbitrators to order immediate payment of all outstanding amounts, a declaration of National Union Fire's rights and Wausau's obligations with respect to payment of all future billed amounts, along with interest, fees, costs and other further relief that may be specified and appropriate.  We reserve the right to modify this arbitration demand and/or the relief requested.

Wausau is requested and required to name its arbitrator within one month of this notice.  Consistent with the operative arbitration provisions, National Union Fire will seek an expeditious and efficient resolution of this matter.

Sincerely,

Janet L. Harrison

cc:      Jennifer Frank – JLT Towers Re (via E-mail)

1